# EXHIBIT A

ØŠÒÖ
Œ ÁÔÆÄ JÁT
SØÕÁ U ÞVŸ
Ù ÚÒ JÜÁ U VÁŠÒÜS
Ò ŠÒÖ
Ô Ò Á Œ G ÁÒŒ

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF KING

KELLY ISBELL and HALEY HENDERSON, on their own behalf and on behalf of others similarly situated,

          Plaintiffs,

   vs.

BEBE STORES, INC.,

          Defendant.

Case No.: _____

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

Plaintiffs Kelly Isbell and Haley Henderson, on their own behalf and on behalf of others similarly situated, on information and belief except to their own experiences and matters of public record, complains of Defendant Bebe Stores, Inc., ("Bebe") as follows:

## I.    INTRODUCTION

1.    In 1998, to protect Washington consumers from the annoyance and harassment caused by the burgeoning spam email industry, the Washington State Legislature enacted the Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code of Washington (RCW).

2.    Among other things, CEMA prohibits transmitting a commercial email with "false or misleading information in the subject line" to the email address of a Washington resident. RCW

CLASS ACTION COMPLAINT
Page 1

**STRAUSS BORRELLI PLLC**
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

19.190.020(1)(b).

3.      Defendant Bebe engages in the precise activity which CEMA prohibits.

4.      Bebe spams Washington consumers, including Plaintiffs, with commercial emails whose subject lines employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets.

5.      This false urgency wastes consumers' time by enticing them to engage with the defendant's marketing efforts for fear of missing out. It also floods consumers' email inboxes with repeated false notifications that the time to act—*i.e. purchase*—is short.

6.      And through this deceptive time-sensitivity, Bebe falsely narrows the field—steering consumers away from shopping for better deals—to its own products and services which must be purchased *now*.

7.      Plaintiffs challenge the defendant's harassment of Washington consumers with deceptive marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive relief against such violations in the future.

## II.      JURISDICTION AND VENUE

8.      The Court has jurisdiction of this case under RCW 2.08.010.

9.      Venue is proper in King County under RCW 4.12.020(3) because Plaintiffs' cause of action, or some part thereof, arose in King County.

## III.      PARTIES

10.      Plaintiffs Kelly Isbell and Haley Henderson are residents of King County, Washington.

11.      Defendant Bebe Stores, Inc., is a California corporation with its principal address

CLASS ACTION COMPLAINT
Page 2

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

at 550 Wisconsin Street, San Francisco, CA 94107.

## IV.    FACTUAL ALLEGATIONS

### A.    CEMA protects Washington consumers from deceptive spam emails.

12.    The Supreme Court of Washington has made clear: "[A]ll Internet users … bear the cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

13.    In 1998, the Legislature found that the "volume of commercial electronic mail" was "growing," generating an "increasing number of consumer complaints." Laws of 1998, ch. 149, § 1.

14.    While it's been nearly three decades since CEMA's enactment, the problems caused by unsolicited commercial email, *i.e.* spam email, have grown exponentially.

15.    The problems, however, are not limited to email content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

16.    In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

17.    In 2012, one study estimated that Americans bear "costs of almost $20 billion annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).

18.    Even when bulk commercial email marketers are operating under color of consumer consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice" approach predominant in the United States—"is a fiction." Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

CLASS ACTION COMPLAINT
Page 3

**STRAUSS BORRELLI PLLC**
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

19. Consumers therefore routinely "consent" to receive flurries of commercial emails which they did not meaningfully request and in which they have no genuine interest.

20. This includes emails sent to consumers from businesses with which they have no prior relationship—by virtue of commercial data brokers and commercial data sharing agreements.

21. Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email address for everything from opening a bank account to getting your dog's nails trimmed, and … [o]nce you hand over your email address, companies often use it as an all-access pass to your inbox: Think of shopping websites that send account updates, deals, 'we miss you' messages, and holiday promotions throughout the year. It's too much." Kaitlyn Wells, *Email Unsubscribe Services Don't Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/.

22. The Legislature presciently intended CEMA to "provide some immediate relief" for these problems by prohibiting among other things commercial emails that "contain untrue or misleading information in the subject line." Laws of 1998, ch. 149, § 1.

23. CEMA thereby protects Washington consumers against the "harms resulting from deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).

24. CEMA's "truthfulness requirements" increase the costs of sending deceptive commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

25. CEMA's "truthfulness requirements" thereby advance the statute's aim of protecting consumers "from the problems associated with commercial bulk e-mail" while facilitating commerce "by eliminating fraud and deception." *Id.*

26. CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language,

CLASS ACTION COMPLAINT
Page 4

CEMA unambiguously prohibits "sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash. 2025).

27.     CEMA's protections do not depend on whether any email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

28.     The statute's only concern is to suppress false or misleading information in the subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

**B.      The subject lines of Bebe's marketing emails make false time scarcity claims.**

29.     One common way online marketers "manipulate consumer choice by inducing false beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

30.     The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patterns to Light*, *supra* para. 29, at 22.

31.     "False or misleading scarcity claims can change the behaviour of consumers." *Online Choice Architecture, supra* para. 29, at 27.

32.     Representations about the timing and duration of sales, discounts, and other special

CLASS ACTION COMPLAINT
Page 5

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

offers are fundamentally representations about prices, and such representations matter to ordinary consumers. *See, e.g.*, Huiliang Zhao *et al.*, *Impact of Pricing and Product Information on Consumer Buying Behavior with Consumer Satisfaction in a Mediating Role*, 12 Frontiers in Psychology 720151 (2021), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC8710754/pdf/fpsyg-12-720151.pdf/.

33.    False scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture*, *supra* para. 29, at 26.

34.    Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals, by "induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

35.    Under time pressure, "consumers might take up an offer to minimise the uncertainty of passing it up." *Id.*

36.    False time scarcity claims thus *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller's benefit*.

37.    Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* at 27.

38.    False time scarcity claims also harm market competition. Consumers learn to ignore scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.*

39.    These false time scarcity claims are a staple of the defendant's email scheme to compel consumers to purchase its products.

40.    **Urgent Spam Emails.** Bebe is practiced in this trick of luring in consumers through

CLASS ACTION COMPLAINT
Page 6

**STRAUSS BORRELLI PLLC**
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

urgent subject headings in emails that do not reflect the true availability of the deal itself, as the examples below demonstrate.

41.     Bebe is a women's retail fashion brand that produces and sells apparel and accessories, including handbags, watches, and various other womenswear items.  The company regularly uses false time scarcity claims to entice consumers to purchase its products through its website, www.bebe.com.

42.     For example, the defendant has repeatedly deployed its deceptive strategy by extending promotions beyond their advertised end date. A Memorial Day Sale in 2022 provides an apt example.

43.     Bebe's approach is simple. First, it announces a sale.

44.     On May 29, 2022, Bebe sent consumers an email with the subject line: "UP TO 80% OFF SITEWIDE[.]" Within the message, Bebe provided a promo code allowing consumers to accept the offer on Bebe's website and noting that the promotion would end on May 30, 2022.

45.     Next, Bebe uses the subject lines of its follow-up emails to assert false time pressure on recipients. These subject lines urge consumers to purchase from Bebe's website by warning them that the offer is coming to an end. Bebe did so, regarding its Memorial Day Sale, on May 30, 2022, by sending consumers an email with the subject line: " 🚨 WE'RE DOING LAST CALL 🚨 [.]" The siren emojis surrounding the subject line emphasize the warning. Even so, May 30 was not the last call for the holiday sale.

46.     Then, Bebe completes the pattern by extending the promotion beyond its original end date. It did so for the Memorial Day Sale on May 31, 2022, in an email with the heading: "SALE EXTENDED 💖 [.]" The message included a new expiration date of May 31, 2022.

47.     Thus, one day after warning consumers that it was the "last call" to obtain up to

CLASS ACTION COMPLAINT
Page 7

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

80% off their purchase, Bebe extended the sale and proved the falsity of its May 30, 2022, subject line. Consumers in receipt of the May 30 email were not at risk of missing the deal, had they ignored the email's title, because Bebe did not end the promotion on May 30. The false conclusion of The Memorial Day Sale was simply a marketing strategy meant to compel consumers to purchase the defendant's products.

48.    Bebe fashioned a similar deception in November 2022.

49.    Consistent with its typical pattern, on November 11, 2022, Bebe sent an email with the subject line: "Happy Singles Day! Take 40% Off Sale[.]" Unfortunately for celebrants, Bebe would merely use the holiday as a vehicle to mislead consumers.

50.    Later the same day, Bebe sent another email pressuring consumers to act quickly because the offer was ending. The subject line of that email stated: "LAST CHANCE: 40% OFF SALE STYLES[.]"

51.    However, the claim made in the email's subject line was untrue. November 11 was not consumers' last chance to obtain 40% off sale items.

52.    The following day, November 12, 2022, Bebe proved as much with an email titled: "Surprise! We Extended Our Sale 💖 [.]" The 40% off "sale styles" offer was extended beyond the advertised end date.

53.    Thus, despite Bebe's November 11, 2022, subject line, consumers had additional time to accept the offer. The "last chance" warning was simply another example of Bebe's deceptive strategy: manufacturing false pressure meant to drive consumers to its website and, ultimately, the checkout screen.

54.    True to form, Bebe deployed its deceptive strategy again in May 2023.

55.    On the morning of May 1, 2023, Bebe sent an email warning consumers about the

CLASS ACTION COMPLAINT
Page 8

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

end of a discount promotion. The message was titled: "Don't Miss Out on Up to $75 OFF[.]" The promotion offered consumers $75 off when they spent $200 on Bebe's website.

56.    Later that same day, Bebe reminded consumers that their time to receive the discount was coming to an end in an email with the subject line: "The ⏰ Is Ticking - Save Up to $75[.]" A banner at the top of the email warned consumers that it was their "last chance" to participate in the promotion while text at the bottom confirmed the offer would expire on May 1.

57.    It wouldn't take long for Bebe to demonstrate the falsity of the May 1 subject line because, by May 2, 2023, Bebe had extended the deal. An email sent on that date and titled, "SALE EXTENDED | UP TO $75 OFF" extended the offer under the same terms, save for a new deadline. The extension moved the offer's expiration date to May 4, 2023.

58.    Despite Bebe's claim that the chance for savings was coming to an end on May 1, 2023, consumers would have additional time—additional days in fact—beyond the threatened deadline during which they could choose to participate in the promotion.

59.    The same pattern was deployed two months later, in July. Bebe announced a promotion, pressured consumers to participate in the promotion by presenting it as time-limited, then extended the promotion beyond the advertised deadline. The subject lines alone demonstrate the misleading strategy:

   a.   7/4/23: "Get It While It's Hot | Up to 80% Off Sale 🔥 "

   b.   7/5/23: "👇 Up to 80% Off Sale Ends Tonight!"

   c.   7/5/23: "LAST CALL: Up to 80% Off Sale"

   d.   7/6/23: "Sale Extended!! | Up to 80% OFF Sale"

60.    The defendant acknowledged its prior misrepresentation in the preview text of the July 6 email which read: "Sale ends tonight – for real." Such explanation is needed when a retailer

CLASS ACTION COMPLAINT
Page 9

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

girds its marketing campaign in deception. If Bebe kept to the original deadlines that it leveraged against consumers, then after-the-fact clarifications wouldn't be necessary.

61. As the repeat extensions demonstrate, there is nothing scarce about Bebe's offers. Bebe simply manufactures false time pressure and fake deadlines to influence consumers' habits and purchasing choices and influence their buying decisions with false information. The advertised deadlines aren't actual deadlines at all.

62. The pattern continued throughout 2023 with multiple promotions assigned false deadlines only to be extended shortly thereafter. Bebe's approach is clear by reference to the following subject lines:

    a.  9/1/23: "Sale Away This Labor Day | Up to 75% OFF 😍 "

    b.  9/4/23: "LAST DAY: The Labor Day Sale ⏰ "

    c.  9/4/23: "FINAL HOURS: The Labor Day Sale ⏳ "

    d.  9/5/23: "EXTENDED: The Labor Day Sale is ON – One More Day!"

    e.  9/10/23: "Don't Miss Your VIP Savings! ✨ "

    f.  9/10/23: " 📣 Your VIP Savings End Tonight! Don't Miss Out!"

    g.  9/11/23: "Your VIP Offer is Extended! Up to 65% Off 🥳 "

    h.  9/23/23: "Ready, Set, Save: Up to 40% OFF Your Fall Wardrobe!"

    i.  9/24/23: "Up to 40% OFF Fall Essentials Ends Tonight!"

    j.  9/24/23: "Don't Miss Out! 40% Off Expires Tonight! 🚨 "

    k.  9/25/23: " 📣 We Extended 40% OFF Styles for Fall!"

    l.  9/29/23: "STARTS NOW: 50% Off Sale Inside! 🎉 "

    m.  9/30/23: " ⏰ Tick Tock: Extra 50% off Sale on Sale Ends Tonight!"

CLASS ACTION COMPLAINT
Page 10

    n.  9/30/23: "Strike Before Midnight: Extra 50% Off Sale Items Ending! 🛎 "

    o.  10/1/23: "We EXTENDED Your Extra 50% OFF! 🎺 "

    p.  10/6/23: "STARTS NOW: Get 30% OFF 💸 "

    q.  10/7/23: "Hurry! Your Chance to Save 30% Ends Tomorrow!"

    r.  10/8/23: " 🚨 Savings End Tonight: Last Chance for 30% Off!"

    s.  10/8/23: "Don't miss 30% Off! ⏰ Ends at Midnight!"

    t.  10/9/23: "Sale Extended! 30% OFF 2 Items, Just for You 🎉 "

    u.  11/5/23: "Extra 50% Discount on Already Discounted Styles! 🎉 "

    v.  11/6/23: "LAST DAY - Extra 50% Off Sale On Sale ⏳ "

    w.  11/6/23: "FINAL HOURS! ⏰ Extra 50% Off Sale Ends Soon"

    x.  11/7/23: "Drop Everything: Extra 50% Off Sale EXTENDED!"

63.    The strategy pairing false deadlines and "surprise" extensions continued into 2024 and 2025, as evidenced in these subject lines:

    a.  4/5/24: "Extra 40% OFF Sale Styles? YES, Please!"

    b.  4/6/24: " ⏰ Your Extra 40% Off Ends Tonight!"

    c.  4/7/24: "Surprise Extension: 40% Off Just Got Another Day!"

    d.  7/5/24: " ⏰ ✨ Last Day to Sparkle & Save"

    e.  7/6/24: " ✨ 4th of July Savings EXTENDED – Ends TONIGHT!!"

    f.  9/2/24: "Don't Miss 30% Off Full Price!"

    g.  9/3/24: " 📣 Good News!! SALE EXTENDED!!"

    h.  12/2/24: " 🕐 ✨ LAST CALL: Cyber Monday 50% OFF Everything!"

CLASS ACTION COMPLAINT
Page 11

**STRAUSS BORRELLI PLLC**
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

i.   12/3/24: "💥 EXTENDED: Cyber Monday continues with 50% OFF!"

j.   12/20/24: "⏰ 👉 Last Call for 40% OFF!"

k.   12/21/24: "🚨 FLASH SALE EXTENDED – 40% Off Everything!"

l.   5/11/25: "Up to 40% Off → Time's Running Out!!! ⏳ "

m.  5/12/25: "The Heat Is ON 🤡 Up to 40% Off Until Midnight!"

n.   5/13/25: "EXTENDED: Up to 40% Off! 🎉 "

o.   6/16/25: "This Sale and Up to 70% Off Are Saying Bye 👋 "

p.   6/16/25: "⚠️ Up to 70% OFF Until Midnight ⚠️ "

q.   6/17/25: "EXTENDED: One more day to Spend & Save"

r.   9/1/25: "ENDING NOW: 50% Off Sale"

s.   9/2/25: "We Couldn't Resist, SALE EXTENDED!!!"

64.    As these subject lines demonstrate, Bebe engages in an email marketing strategy whereby it creates a false sense of urgency, misrepresents when sales end, and then strategically extends those sales to pull in consumers with subject headings misrepresenting the availability of deals.

65.    Bebe dresses other promotions with deception as well. In some instances, the defendant pressures consumers to buy quickly—because the opportunity to receive a discount is coming to an end—only to advertise a better sale shortly thereafter. A sitewide discount from 2022 provides an example of this strategy.

66.    On March 18, 2022, Bebe sent consumers an email with the subject line: "Last Chance For 25% Off!" The body of the email offered the discount sitewide and confirmed the promotion would end that night.

CLASS ACTION COMPLAINT
Page 12

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

67.     Days later, however, Bebe offered a better discount as announced in a March 26, 2022, email titled, "30% Off Starts Now[.]" Again, the message confirmed that the discount was offered sitewide.

68.     So, March 18 was not consumers' last chance for 25% off. Within days, they would be able to save 25%, *along with an additional 5%*. The March 26, 2022, email confirmed that the time pressure leveraged against consumers in the March 18 subject line was misleading.

69.     Consumers who ignored Bebe's March 18 warning were, in effect, better off having done so. This fact aptly demonstrates the harm that consumers may experience when retailers skirt the truth. The false time scarcity leveraged by Bebe might compel a buyer to purchase from the website so they can obtain the "last chance" 25% off discount. Were that buyer not deceived into believing that the 25% off deal was a rarity, they might have researched other options or, at the very least, waited a few days and received a deeper 30% discount on their purchase.

70.     Another example came in late 2023.

71.     On December 7, 2023, Bebe sent an email titled: " 🔔 LAST CALL: 40% Off New Arrivals Ends Tonight!" The email provided a promo code that consumers could use to save 40% off the items advertised in the subject line.

72.     Upon information and belief, time pressures such as those deployed by Bebe are even more effective in the latter months of the year when consumer spending is at its highest and the holidays are fast approaching. Here, the defendant leveraged that pressure to urge consumers not to miss the opportunity to get 40% off new items, as though the offer was fleeting. However, the very next day, Bebe offered a better deal for new arrivals.

73.     On December 8, 2023, Bebe sent an email with the subject line: " 🎁 Limited Time: Season's Savings - 50% Off for You!" The email provided a promo code that consumers could use

CLASS ACTION COMPLAINT
Page 13

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

to save 50% on new arrivals.

74.    Thus, despite Bebe's December 7 misleading subject line announcing the "last call" for savings on newly arrived items, consumers would have access to a better offer one day later.

75.    The pattern would continue in 2024.

76.    On February 10, 2024, Bebe sent consumers an email with the subject line: "It's Now or Never: Last Call for Extra 40% OFF ❤️ [.]" The promotion was part of a Spring Flash Sale and allowed consumers to take an extra 40% off sale merchandise. A better offer, however, would soon be available.

77.    On February 16, 2024, a heavier discount was presented to consumers in an email titled: "▨ STARTS NOW: Grab an Extra 50% OFF Sale!"

78.    Thus, February 10, 2024, was not the last call for an extra 40% off. Consumers could get 40% and more by waiting six days to participate in the 50% off sale announced on February 16.

79.    The same pattern would continue in 2025. Again, Bebe would advertise reductions on sale merchandise, follow up with emails emphasizing the time scarcity of the offers, then advertise a better deal shortly thereafter, as the subject lines below demonstrate:

   a.  1/14/25: "⏳ Final Hours! 75% Off Sale!"

   b.  1/20/25: "⚡ 48-Hour Flash Sale: Up to 80% Off! ⚡ "

   c.  8/18/25: "ENDS NOW: Stack an EXTRA 40% Off"

   d.  8/29/25: "Summer's Out, Sale's On - EXTRA 50% OFF"

80.    By deploying such a strategy, Bebe maximizes its profits. Consumers succumbing to the time pressures of the January 14 and August 18 emails paid more for their purchases. Had they not been misled by the defendant's urgent subject lines, those consumers might have

CLASS ACTION COMPLAINT
Page 14

**STRAUSS BORRELLI PLLC**
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

researched prices at other retailers or, at the very least, waited to make use of the better offers that Bebe provided later in the month.

81.     Bebe's use of false time scarcity claims to entice consumers to purchase its products isn't limited to sales items.

82.     On September 8, 2025, Bebe sent consumers an email with the subject line: "ENDS TONIGHT: Up to 40% Off 🗣️ [.]" This time, consumers could save 40% on an entire order totaling over $150.

83.     However, a few days later, Bebe advertised a better offer.

84.     On September 11, 2025, Bebe returned to consumers' inboxes to present a discount that didn't require a minimum spend. The email was titled: "Regret Nothing: Up to 40% Off Everything!"

85.     Thus, the September 8 subject line was misleading. Within days, the same discount amount was available again and without a minimum spend amount.

86.     A similar example occurred the following month.

87.     On October 5, 2025, Bebe sent an email with the subject line: "Last Call for Savings | SAVE UP TO 40%[.]" Again, the message gave consumers a promo code that could be used to obtain 40% off purchases totaling over $150. Again, and despite the time scarcity claim, Bebe would quickly make a better offer available.

88.     On October 8, 2025, Bebe sent consumers an email titled: "40% Off? Say Less. 🧒 [.]"

89.     So, October 5 was hardly the "last call" for 40% off. A mere three days later, consumers had the same opportunity.

90.     At other times, Bebe has spammed consumers about the end of a sale only to revive

CLASS ACTION COMPLAINT
Page 15

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

the same offer shortly thereafter. Such was the case in January 2024.

91.    On January 22, 2024, Bebe sent consumers an email titled: "FINAL HOURS! Up to 80% Off Ends Soon ⚡ [.]" The promotion provided consumers with a promo code that allowed them to obtain up to 80% off sale items. However, January 22 would not mark the final hours for the opportunity.

92.    Indeed, Bebe recycled the 80% off offer. The January 22 subject line needlessly pressured consumers to act because the opportunity would soon return.

93.    On January 28, 2024, Bebe sent an email announcing the same discount in a message with the subject line: "✔️ Hurry! Up To 80% Off Sale Starts Now!" Despite the contrived time scarcity deployed in the January 22 subject line, consumers had an opportunity to get the same discount within a week of Bebe's "final hours" warning.

94.    Another instance occurred on February 16, 2025, when Bebe sent consumers an email with a subject line warning of an impending deadline: "🚨 Up to 65% Off Sale Styles Ends Today!"

95.    Two days later, on February 18, 2025, Bebe sent a message titled: "FINAL HOURS 👉 UP TO 65% OFF[.]" The body of the email again advertised "up to 65% off sale items."

96.    The February 18 email confirms the falsity of the February 16, 2025, subject line. Despite the contrived time scarcity, consumers had another opportunity during which they could accept the defendant's offer a mere two days after the advertised deadline.

97.    As these subject lines demonstrate, Bebe employs a strategy where it pressures consumers to purchase its products by falsely representing the limited availability of its offers; offers that are repackaged, repeated, and redeployed.

98.    These and other examples of the commercial emails that Bebe has sent consumers

CLASS ACTION COMPLAINT
Page 16

**STRAUSS BORRELLI PLLC**
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

containing subject lines with false or misleading statements are attached to this Class Action Complaint as Exhibit A.

**C.    Bebe knows when it sends emails to Washington residents.**

99.    A sophisticated commercial enterprise, like Bebe, which is engaged in persistent marketing through mass email campaigns across the United States, has several ways of knowing where the recipients of its marketing emails are located. The means it employs are peculiarly within its knowledge.

100.    First, the sheer volume of email marketing that Bebe engages in put it on notice that Washington residents would receive its emails.

101.    Second, Bebe may obtain location information tied to email addresses when consumers make purchases from Bebe through digital platforms, including the Bebe website, or otherwise self-report such information to Bebe.

102.    Third, Bebe may obtain location information tied to email addresses by tracking the IP addresses of devices used to open its emails, which in turn can be correlated to physical location (as illustrated, for example, by the website https://whatismyipaddress.com/).

103.    Specifically, Bebe appears to use Klaviyo to manage its email marketing campaigns. Klaviyo informs users like Bebe where the recipients of its marketing emails are located using IP geolocation and other data extracted from recipients' interactions with the user, which Klaviyo tracks in detail. *See* "Understanding when and how Klavijo sets a profile's location," Klaviyo (July 7, 2025) (describing "how a profile's location and timezone information are set and updated"), https://help.klaviyo.com/hc/en-us/articles/115005073907/; "Understanding profiles in Klaviyo," Klaviyo (Aug. 5, 2025) ("Each individual profile features an activity log to capture a timeline of their interactions with your business," including receiving emails, opening

CLASS ACTION COMPLAINT
Page 17

emails, and clicking links within emails.), https://help.klaviyo.com/hc/en-us/articles/1150052470880. So, the platform should allow Bebe to access a list of every email address that was sent a marketing email. It should also allow Bebe to determine who viewed each email and who clicked on any links within them.

104.    Bebe is likely able to infer the general geographic location of recipients by state based on their IP address at the time of email open or link click.

105.    Fourth, Bebe may obtain location information tied to email addresses by purchasing consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell access to databases linking email addresses to physical locations, among other identifiers.

106.    Fifth, Bebe may obtain location information tied to email addresses by using "identity resolution" services offered by companies such as LiveRamp, which can connect consumers' email addresses to their physical locations, among other identifiers.

107.    Sixth, Bebe may obtain information that the recipients of its marketing emails are Washington residents because that information is available, upon request, from the registrant of the Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

108.    It is thus highly probable that a seller with the size and sophistication of Bebe employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level.

**D.    Bebe violated Plaintiffs' rights under CEMA to be free from deceptive commercial emails.**

109.    Bebe has spammed Plaintiffs with commercial emails whose subject lines contain false or misleading statements in violation of their right to be free from such annoyance and harassment under CEMA.

CLASS ACTION COMPLAINT
Page 18

**STRAUSS BORRELLI PLLC**
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

110.    Both plaintiffs received the September 1, 2025, email titled, "ENDING NOW: 50% Off Sale" and the September 8, 2025, email titled, "ENDS TONIGHT: Up to 40% Off 🗣 [.]"

111.    These emails were false or misleading in violation of CEMA, for misrepresenting the timing of the deals, as described herein.

112.    The emails contained false statements of fact as to the "duration or availability of a promotion." *Brown*, 567 P.3d at 47.

## V.    CLASS ALLEGATIONS

113.    Plaintiffs bring this action under Civil Rule 23 on behalf of the following putative class ("Class"):

> All Washington citizens holding an email address to which
>
> Defendant sent or caused to be sent any email listed in Exhibit A
>
> during the Class Period.

114.    Excluded from this definition of the Class are Defendant's officers, directors, and employees; Defendant's parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; undersigned counsel for Plaintiffs; and all judges and court staff to whom this action may be assigned, as well as their immediate family members.

115.    The Class Period extends from the date four years before this Class Action Complaint is filed to the date a class certification order is entered in this action.

116.    Plaintiffs reserve the right to amend the Class definition as discovery reveals additional emails containing false or misleading information in the subject line that Defendant sent or caused to be sent during the Class Period to email addresses held by Washington residents.

117.    The Class is so numerous that joinder of all members is impracticable because the Class is estimated to minimally contain thousands of members.

CLASS ACTION COMPLAINT
Page 19

**STRAUSS BORRELLI PLLC**
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

118. There are questions of law or fact common to the class, including without limitation whether Defendant sent commercial emails containing false or misleading information in the subject line; whether Defendant sent such emails to email addresses it knew or had to reason to know were held by Washington residents; whether Defendant's conduct violated CEMA; whether Defendant's violation of CEMA constituted a *per se* violation of the Consumer Protection Act, RCW 19.86.020 (CPA); and whether Defendant should be enjoined from such conduct.

119. Plaintiffs' claims are typical of the Class's because, among other reasons, Plaintiffs and Class members share the same statutory rights under CEMA and the CPA, which Defendant violated in the same way by the uniform false or misleading marketing messages it sent to all putative members.

120. Plaintiffs will fairly and adequately protect the Class's interests because, among other reasons, Plaintiffs share the Class's interest in avoiding unlawful false or misleading marketing; have no interest adverse to the Class; and have retained competent counsel extensively experienced in consumer protection and class action litigation.

121. Defendant has acted on grounds generally applicable to the Class, in that, among other ways, it engaged in the uniform conduct of sending uniform commercial emails to Plaintiffs and the Class, which violate CEMA and the CPA in the same way, and from which it may be enjoined as to Plaintiff and all Class members, thereby making appropriate final injunctive relief with respect to the Class as a whole.

122. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, in that, among other ways, Defendant has violated their rights under the same laws by the same conduct, and the only matters for individual determination are the number of false or misleading emails received by each Class member and

CLASS ACTION COMPLAINT
Page 20

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

that Class member's resulting damages.

123.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other reasons, the claims at issue may be too small to justify individual litigation and management of this action as a class presents no special difficulties.

## VI.   CLAIMS TO RELIEF

### First Claim to Relief

**Violation of the Commercial Electronic Mail Act, RCW 19.190.020**

124.   Plaintiffs incorporate and realleges paragraphs 1–112 above.

125.   CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

126.   Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

127.   Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

128.   Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents, including because Defendant knew that Plaintiffs and putative members were Washington residents as such "information is available, upon request, from the registrant of the internet domain name contained

CLASS ACTION COMPLAINT
Page 21

**STRAUSS BORRELLI PLLC**
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

in the recipient's electronic mail address." RCW 19.190.020(b)(2).

129.    Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

130.    For Defendant's violation of CEMA, Plaintiffs are entitled to all available relief, including an injunction against further violations.

## Second Claim to Relief

### Violation of the Consumer Protection Act, RCW 19.86.020

131.    Plaintiffs incorporate and realleges paragraphs 1–112 above.

132.    The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

133.    A violation of CEMA is a *per se* violation of the CPA. RCW 19.190.030.

134.    A violation of CEMA establishes all the elements necessary to bring a private action under the CPA. *Wright v. Lyft*, 189 Wn. 2d 718 (2017).

135.    CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

136.    Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

137.    Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the

CLASS ACTION COMPLAINT
Page 22

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

meaning of CEMA. RCW 19.190.010(2).

138.    Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents.

139.    Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

140.    For Defendant's violation of the CPA, Plaintiffs and putative members are entitled to an injunction against further violations; the greater of Plaintiffs' actual damages or liquidated damages of $500 per violation, trebled; and costs of the suit, including a reasonable attorney's fee.

## VII.    JURY DEMAND

141.    Plaintiffs will demand a jury trial by separate document in accordance with Local Civil Rule 38(b).

## VIII.    PRAYER FOR RELIEF

Plaintiffs ask that the Court:

A.    Certify the proposed Class, appoint Plaintiffs as Class representatives, and appoint undersigned counsel as Class counsel;

B.    Enter a judgment in Plaintiffs' and the Class's favor permanently enjoining Defendant from the unlawful conduct alleged;

C.    Enter a judgment in Plaintiffs' and the Class's favor awarding actual or liquidated damages, trebled, according to proof;

\\

\\

CLASS ACTION COMPLAINT
Page 23

D.   Award Plaintiffs' costs of suit, including reasonable attorneys' fees; and

E.   Order such further relief the Court finds appropriate.

DATE:  October 21, 2025

Respectfully submitted,

/s/ Samuel J. Strauss
Samuel J. Strauss, WSBA No. #46971
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel.: (872) 263-1100
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops*
Natalie A. Lyons*
Ian R. Bensberg*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

Gerard J. Stranch, IV*
Michael C. Tackeff*
Andrew K. Murray*
**STRANCH, JENNINGS &
GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com
amurray@stranchlaw.com

*Attorneys for Plaintiffs*

**\* Applications for admission *pro hac
vice* forthcoming**

CLASS ACTION COMPLAINT
Page 24

— **EXHIBIT  A** —

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF KING

| KELLY ISBELL and HALEY HENDERSON, on their own behalf and on behalf of others similarly situated, | Case No.: _____ |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| vs. | EXHIBIT A |
| BEBE STORES, INC., | |
| Defendant. | |

| Date | Subject Line |
| --- | --- |
| 3/18/22 | Last Chance For 25% Off! |
| 5/30/22 | 🚨 WE'RE DOING LAST CALL 🚨 |
| 11/11/22 | LAST CHANCE: 40% OFF SALE STYLES |
| 5/1/23 | Don't Miss Out on Up to $75 OFF |
| 5/1/23 | The ⏰ Is Ticking - Save Up to $75 |
| 7/5/23 | 📣 Up to 80% Off Sale Ends Tonight! |
| 7/5/23 | LAST CALL: Up to 80% Off Sale |
| 9/4/23 | LAST DAY: The Labor Day Sale ⏰ |
| 9/4/23 | FINAL HOURS: The Labor Day Sale ⌛ |
| 9/10/23 | Don't Miss Your VIP Savings! ✨ |
| 9/10/23 | 📣 Your VIP Savings End Tonight! Don't Miss Out! |
| 9/24/23 | Up to 40% OFF Fall Essentials Ends Tonight! |
| 9/30/23 | ⏰ Tick Tock: Extra 50% off Sale on Sale Ends Tonight! |

CLASS ACTION COMPLAINT
EXHIBIT A - Page 1

**STRAUSS BORRELLI PLLC**
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

| Date | Subject Line |
|------|--------------|
| 9/30/23 | Strike Before Midnight: Extra 50% Off Sale Items Ending! 🔔 |
| 10/7/23 | Hurry! Your Chance to Save 30% Ends Tomorrow! |
| 10/8/23 | 🚨 Savings End Tonight: Last Chance for 30% Off! |
| 10/8/23 | Don't miss 30% Off! ⏰ Ends at Midnight! |
| 11/6/23 | LAST DAY - Extra 50% Off Sale On Sale ⌛ |
| 11/6/23 | FINAL HOURS! ⏰ Extra 50% Off Sale Ends Soon |
| 12/7/23 | 🔔 LAST CALL: 40% Off New Arrivals Ends Tonight! |
| 1/22/24 | FINAL HOURS! Up to 80% Off Ends Soon ⚡ |
| 2/10/24 | It's Now or Never: Last Call for Extra 40% OFF ❣️ |
| 4/6/24 | ⏰ Your Extra 40% Off Ends Tonight! |
| 7/5/24 | ⏰ ✨ Last Day to Sparkle & Save |
| 12/2/24 | 🕐 ✨ LAST CALL: Cyber Monday 50% OFF Everything! |
| 12/20/24 | ⏰ 👉 Last Call for 40% OFF! |
| 1/14/25 | ⌛ Final Hours! 75% Off Sale! |
| 2/16/25 | 🚨 Up to 65% Off Sale Styles Ends Today! |
| 5/11/25 | Up to 40% Off → Time's Running Out!!! ⌛ |
| 5/12/25 | The Heat Is ON 🤡 Up to 40% Off Until Midnight! |
| 6/16/25 | This Sale and Up to 70% Off Are Saying Bye 👋 |
| 6/16/25 | ⚠️ Up to 70% OFF Until Midnight ⚠️ |
| 8/18/25 | ENDS NOW: Stack an EXTRA 40% Off |
| 9/1/25 | ENDING NOW: 50% Off Sale |
| 9/8/25 | ENDS TONIGHT: Up to 40% Off 🗣️ |
| 10/5/25 | Last Call for Savings | SAVE UP TO 40% |

CLASS ACTION COMPLAINT
EXHIBIT A - Page 2

**STRAUSS BORRELLI PLLC**
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com