HON. BARBARA ROTHSTEIN

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KELLY ISBELL and HALEY HENDERSON, on their own behalf and on behalf of others similarly situated,

Plaintiffs,

and

STATE OF WASHINGTON,

Plaintiff-Intervenor,

vs.

BEBE STORES, INC.

Defendant.

No. 2:25-cv-02388-BJR

**DEFENDANT'S REPLY IN RESPONSE TO PLAINTIFF-INTERVENOR'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## I.    INTRODUCTION

Defendant Bebe Stores, Inc. ("Defendant") respectfully submits this reply in response to Plaintiff-Intervenor State of Washington's Response in Opposition to Defendant's Motion to Dismiss (Dkt. #28) ("Opp") and in further support of its Motion to Dismiss (Dkt. #20) ("Motion").[1]

The State of Washington's (the "State") intervention and arguments do not cure the fundamental preemption and constitutional defects in Plaintiffs' claims. Instead, the State largely repeats Plaintiffs' unpersuasive arguments. Opp. at 1, 3-4. It asks this Court to read the Controlling

---

[1] Pursuant to the Stipulated Motion and Order Re Intervention Under FED. R. CIV. P. 5.1 and 28 U.S.C. § 2403(b) (Dkt. #26), Defendant is permitted to file any reply to Plaintiff-Intervenor's substantive brief within fourteen days of its filing. This reply is timely submitted.

REPLY TO STATE'S OPP.        - 1
No. 2:25-cv-02388-BJR

the Assault of Non-Solicited Pornography and Marketing Act of 2003's (the "CAN-SPAM Act") narrow savings clause as a broad license for strict-liability regulation of subject lines—without allegations of material deception, reliance, scienter, or harm. *Id*. at 4-7. That reading conflicts with *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009), and with Congress's intent to establish a uniform national standard for commercial email.

The State's dormant Commerce Clause arguments fare no better. The State invokes *National Pork Producers Council v. Ross*, 598 U.S. 356 (2023), but that decision rejected only a per se rule against laws with extraterritorial *effects*; it did not disturb the constitutional bar on state laws that directly regulate out-of-state transactions by those with no connection to the State. Washington's Consumer Electronic Mail Act ("CEMA"), as applied here, would regulate nationwide email campaigns drafted, sent, and read outside of Washington based solely on a database residency tag, and would impose burdens on interstate commerce clearly excessive in relation to any minimal local benefits. For these reasons and those set out in Defendant's prior submissions, Plaintiffs' CEMA claim cannot proceed, and any derivative Washington Consumer Protection Act ("CPA") theory necessarily fails as well. Plaintiffs' Motion should be granted.

## II.   ARGUMENT

### A.   CAN-SPAM Preempts Plaintiffs' Strict-Liability CEMA Theory.

The State's strict-liability CEMA theory cannot survive CAN-SPAM's broad preemption. *Virtumundo* makes clear that only traditional fraud or deception type theories fall within the narrow "falsity or deception" savings clause. 575 F.3d at 1061, 1063. Yet the State conflates statutory wording with substantive scope, treating CEMA's use of "false of misleading" as dispositive of preemption—precisely the reasoning *Virtumundo* rejected. Opp. at 4-7. The State further insists no fraud-like elements need pleading since CEMA statutorily defines the wrong. Opp. at 9-10. Both positions fail.

### 1.   Plaintiffs and the State Misread *Virtumundo* and CAN-SPAM's Savings Clause.

CAN-SPAM's preemption clause "broadly preempt[s] state regulation of commercial e-

mail with [a] limited, narrow exception" for "traditional tort theories such as claims arising from fraud or deception." *Virtumundo*, 575 F.3d at 1061, 1063. The Ninth Circuit construed the "falsity or deception" savings clause to preserve only claims resembling common-law fraud or deceit. *Id.* at 1062-63. These types of traditional tort theories require a plaintiff to allege a material misrepresentation, knowledge of falsity (scienter), intent to induce reliance, justifiable reliance, and resulting damages. *See, e.g.*, Restatement (Second) of Torts § 525; *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 166, 273 P.3d 965 (2012). As the Ninth Circuit persuasively noted, allowing states to impose liability for "immaterial inaccuracies or omissions" would "turn an exception to a preemption provision into a loophole so broad that it would virtually swallow the preemption clause itself." *Virtumundo*, 575 F.3d at 1061-1062 (quoting *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 355 (4th Cir. 2006)).[2]

The State argues that because CEMA uses "false or misleading" in its subject-line provision, any CEMA claim necessarily falls within CAN-SPAM's "falsity or deception" savings clause and cannot be preempted. Opp at 4-6. That approach elevates CEMA's phrasing over its substance, treating the presence of "false or misleading" language as dispositive of preemption instead of asking whether the claim actually mirrors the fraud or deception based theories Congress chose to preserve. *Virtumundo* forecloses that mode of analysis. There, the State made a similar argument—that CEMA extends only to acts of deception and thus should be deemed saved on its face—and the Ninth Circuit rejected it. Looking to Washington's own definition of "misrepresent" as giving a "false, imperfect, or misleading representation," the court concluded that CEMA's broad terminology "extend[s] CEMA's prohibitive reach and purport[s] to regulate a vast array of non-deceptive acts and practices." *Virtumundo*, 575 F.3d at 1059. That reasoning applies here: merely labeling subject lines as "false or misleading" does not automatically place every CEMA claim inside the narrow "falsity or deception" carve-out to CAN-SPAM's preemption.

---

[2] The State (Opp. at 4-5) invokes a presumption against preemption and CAN-SPAM's legislative history, but neither can override the statute's text or the Ninth Circuit's binding construction of the savings clause in *Virtumundo*, which considered that history and still limited the carve-out to traditional fraud or deception type theories. *See Virtumundo*, 575 F.3d at 1060-63; S. Rep. No. 108-102, at 21-22 (2003).

REPLY TO STATE'S OPP.        - 3
NO. 2:25-cv-02388-BJR

The State also tries to distinguish *Virtumundo* on the grounds that it involved CEMA's header provision, RCW 19.190.020(1)(a), rather than the subject-line provision at issue here, RCW 19.190.020(1)(b). Opp. at 6-7. But this is a distinction without a difference. *Virtumundo*'s preemption analysis did not turn on a technical distinction between subsections; it addressed CEMA's definitions and reach more generally in deciding how CAN-SPAM's savings clause operates. Both subsections use the same broad "misleading" standard, and nothing in *Virtumundo* suggests that CAN-SPAM permits states to impose strict-liability subject-line rules for immaterial or harmless inaccuracies.

Finally, the State leans on *Brown* and recent CEMA trial court decisions to suggest that CEMA, as interpreted, now targets only deceptive factual representations and so must fall within the savings clause. Opp. at 7-10. But *Brown* answered a narrow-certified question about the scope of RCW 19.190.020(1)(b) and did not address CAN-SPAM preemption, materiality, reliance, or harm. And the district court orders cited by the State—*Harrington*, *Ma*, and others—are nonbinding and do not engage with *Virtumundo*'s requirement that state law claims include fraud-like elements to avoid preemption. To the extent those decisions treat any "false or misleading" subject line as categorically saved without examining what elements the plaintiff actually pleads, they are unpersuasive and inconsistent with binding Ninth Circuit precedent, and should not control the analysis here.

**2.     The State's Arguments Do Not Cure Plaintiffs' Failure to Plead Elements of Fraud-Like Conduct.**

*Virtumundo* ties CAN-SPAM's "falsity or deception" savings clause to "traditional tort theories such as claims arising from fraud or deception," which in practice means intentional deception about a material fact that is likely to mislead recipients and causes an adverse effect or concrete harm. *See Martin v. CCH, Inc.*, 784 F. Supp. 2d 1000, 1006 (N.D. Ill. 2011) (holding state anti-spam claims preempted where alleged violations "do not rise to the level of fraud"). As explained in Defendant's Reply (Dkt. #27), Plaintiffs' claims lack fraud-like features: they do not allege material deception to them, reliance, scienter, or any "adverse effect" from the challenged

REPLY TO STATE'S OPP.          - 4
No. 2:25-cv-02388-BJR

emails.

The State does not identify any allegations that would cure those defects. Instead, it argues that Plaintiffs "need not allege the elements of fraud because the statute has already defined the wrongful behavior," and relies on decisions that it says "rejected Bebe's proposed rule that the elements of fraud must be pled to avoid preemption." Opp. at 9-10. But *Virtumundo* limits the savings clause to traditional tort theories such as claims arising from fraud or deception. And CAN-SPAM's deceptive-subject-heading provision requires knowledge that a subject line is likely to mislead about a material fact and that the plaintiff be "adversely affected" by the violation. 15 U.S.C. §§ 7704(a)(2), 7706(g)(1). A CEMA theory that allows statutory damages based solely on receipt of emails—without allegations of material deception, reliance, scienter, or harm—is precisely the kind of strict-liability, more-burdensome regime that falls outside CAN-SPAM's narrow carve-out and is preempted.

**B.      CEMA Violates the Dormant Commerce Clause.**

**1.      CEMA Impermissibly Regulates Out-of-State Communications.**

Defendant explained in its Motion and Reply that CEMA violates the dormant Commerce Clause, including because of its impermissible regulation of out-of-state activity. The State's response rests on two premises: that *National Pork* largely gutted any meaningful extraterritoriality constraint imposed by the Commerce Clause, and that CEMA merely follows Washington residents wherever they go. 598 U.S. 356, 368 (2023); Opp. at 10-13. Neither is correct.

*National Pork* rejected a near-per se rule against state laws with out-of-state *effects*, but it left intact the rule that a statute still violates the dormant Commerce Clause if it "directly regulate[s] out-of-state transactions by those with no connection to the State." 598 U.S. at 376 n.1. That is the situation here. CEMA attaches Washington regulation whenever an email is sent "to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident," and then deems the sender to "know" that fact whenever a domain-name registrant's records say so, regardless of where the message is drafted, transmitted, or read, or where the recipient actually resides. RCW 19.190.020(1)-(2). As the State concedes, that means CEMA

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

applies even when the email is sent and received outside Washington so long as the address is tagged as "Washington," whether accurately or not. Opp. at 11-12.

That structure reflects the same "residency hook" the Ninth Circuit condemned in *Sam Francis v. Christie's, Inc.*, applying the principle that a state may not regulate commercial transactions that take place wholly outside its borders based solely on a party's residency. 784 F.3d 1320, 1323-24 (9th Cir. 2015). There, California conditioned a resale-royalty obligation on the seller's California residence, thereby regulating art sales that occurred wholly in other states between non-California buyers and non-California works solely because a party happened to be a California resident. *Id*. The court held that clause facially unconstitutional. *Id*. CEMA operates the same way: it projects Washington law onto emails that never touch Washington servers, are sent by non-Washington retailers to customers physically outside of Washington, based only on a historical or constructive "residency" label in a private database. RCW 19.190.020(1)-(2). To the extent the State relies on *State v. Heckel*, 143 Wn. 2d 824, 24 P.3d 404 (2001), that decision predates CAN-SPAM, *Sam Francis*, and *Daniels Sharpsmart Inc. v. Smith*, 889 F.3d 608 (9th Cir. 2018), and cannot control this Court's independent application of current federal dormant Commerce Clause doctrine to CEMA as invoked here, in light of its residency-based trigger. *See Sam Francis*, 784 F.3d at 1323-24.

The State's attempt to recast this as a benign effort to protect "Washington residents" wherever they travel does not solve the problem; it merely restates a feature *Sam Francis* deemed impermissible. Opp. at 11-12. Nor does *National Pork* rescue CEMA. That decision dealt with an in-state sales condition (how pork sold *in California* must be produced) and carefully distinguished statutes which applied the same principle to laws directly regulating conduct occurring entirely outside the regulating State. 598 U.S. at 373-76, n.1. CEMA belongs in the latter category and is invalid to that extent. *National Pork* did not displace the rule that a state may not directly regulate transactions that take place wholly outside its borders with no in-state connection, and district courts have continued to apply that principle post-*National Pork. See, e.g., Nat'l Shooting Sports Found. v. Bonta*, 718 F. Supp. 3d 1244, 1256 (S.D. Cal. 2024); *Ass'n for Accessible Meds. v.*

REPLY TO STATE'S OPP.          - 6
No. 2:25-cv-02388-BJR

*Ellison*, 704 F. Supp. 3d 947, 953 (D. Minn. 2023).

### 2.    CEMA Imposes Clearly Excessive Burdens in Interstate Commerce.

The State also unpersuasively downplays CEMA's burdens and inflates its benefits under the analysis of *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Opp. at 12-14. But when a single state couples strict-liability penalties with a residency trigger that is detached from geography, and then applies that regime to nationwide email programs, the resulting burden on interstate commerce is substantial.

CEMA authorizes a statutory penalty of $500 for any subject line later deemed "false or misleading," without requiring deception, reliance, or any cognizable injury. RCW 19.190.020(1)(b), 19.190.040(1). National retailers send millions of emails through systems that, as Congress has recognized, cannot reliably reveal where recipients live. 15 U.S.C. § 7701(a)(11). Faced with CEMA's per-message exposure and constructive-knowledge standard, such businesses are forced either to build and maintain complex infrastructure to identify, track, and segment "Washington" addresses across constantly changing lists, or to conform all national subject-line practices to Washington's rule and accept extraordinarily outsized class-wide risk if they do not. RCW 19.190.020(2).

The State responds that this is merely the "burden to comply with the law" and so not constitutionally significant. Opp. at 13. The dormant Commerce Clause inquiry is precisely about the burden of compliance when a state's rule effectively governs conduct nationwide. *See Flynt v. Bonta*, 131 F.4th 918, 929-31 (9th Cir. 2025); *Alaska Airlines, Inc. v. City of Long Beach*, 951 F.2d 977, 983 (9th Cir. 1991). *Omega* helpfully framed the problem in the spam context: because email addresses do not reveal geography, allowing each state to enforce its own anti-spam regime means the "strictest" state standard because the de facto national rule, which is incompatible with a workable interstate market. 469 F.3d at 355-56.

On the benefit side of the *Pike* balance, the State largely recycles the same generalized spam concerns that led Congress to pass CAN-SPAM and that already support traditional fraud and CPA remedies. Opp. at 2-3, 12-14. CAN-SPAM specifically addresses deceptive subject

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

headings and requires knowledge, likelihood of misleading about a material fact, and an "adversely affected" plaintiff. 15 U.S.C. §§ 7704(a)(2), 7706(g)(1). Plaintiffs here disavow any such harm and seek strict-liability statutory damages based solely on the receipt of emails with urgency-themed subject lines. The incremental local "benefit" of layering CEMA on top of that carefully considered federal framework—particularly at the margin of alleged misstatements about how long a sale will last, unaccompanied by any allegation of reliance or loss—is very modest at best.

When a statute's marginal benefits are slight and already substantially provided by federal law, but its structure forces interstate actors either to reengineer national systems around one state's preferences or to operate under constant threat of enormous class-wide penalties, the burden on interstate commerce is "clearly excessive" within the meaning of *Pike*. *See Pike*, 397 U.S. at 142; *Nat'l Collegiate Athletic Assn v. Miller*, 10 F.3d 633, 638 (9th Cir. 1993). CEMA, as Plaintiffs and the State would apply it here, crosses that line.

### C.    The State's CPA Theory Fails Without a CEMA Violation

The State intervenes only to defend CEMA's constitutionality and appropriately treats the CPA claim as derivative of a CEMA violation. Opp. at 1, 3-4. Because, as explained above, CEMA cannot be applied here consistent with CAN-SPAM and the dormant Commerce Clause, there is no predicate CEMA violation to support any CPA claim, and that claim should therefore be dismissed as well.

### III.    CONCLUSION

Accordingly, and for the reasons set forth in its Motion, Defendant respectfully requests that its Motion be granted and that the Complaint be dismissed with prejudice.

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

Respectfully submitted this 30th day of March, 2026.

DORSEY & WHITNEY LLP

*/s/ Benjamin Greenberg*
Shawn Larsen-Bright WSBA #37066
Benjamin D. Greenberg WSBA #44120
DORSEY & WHITNEY LLP
701 Fifth Avenue, Suite 6100
Seattle, WA 98104
(206) 903-8800
larsen.bright.shawn@dorsey.com
greenberg.ben@dorsey.com

*Attorneys for Bebe Stores, Inc.*

REPLY TO STATE'S OPP.        - 9
No. 2:25-cv-02388-BJR

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I caused the foregoing to be served on the following counsel of record by the method indicated:

Samuel J, Strauss, WSBA #46971
Strauss Borrelli PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
sam@straussborrelli.com

☐ Via Messenger
☐ Via Facsimile
☐ Via U.S. Mail
☐ Via Electronic Mail
☒ Via ECF Notification

Lynn A. Toops
Natalie A. Lyons
Ian R. Bensberg
Cohenmalad, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

Michael C. Tackeff
Stranch, Jennings & Garvey, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
mtackeff@stranchlaw.com

*Attorneys for Plaintiffs*

Bryan Brysacz
Robert Hyde
Claire McNamara
Attorney General of Washington
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
ben.brysacz@atg.wa.gov
robert.hyde@atg.wa.gov
claire.mcnamara@atg.wa.gov

☐ Via Messenger
☐ Via Facsimile
☐ Via U.S. Mail
☐ Via Electronic Mail
☒ Via ECF Notification

*Attorneys for Plaintiff-Intervenor*
*State of Washington*

Dated this 30th day of March, 2026.

/s/ Hannah Sutherland
Hannah Sutherland, Legal Assistant

REPLY TO STATE'S OPP.          - 10
No. 2:25-cv-02388-BJR

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820