Judge Barbara J. Rothstein

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

KELLY ISBELL and HALEY HENDERSON, on their own behalf and on behalf of all others similarly situated,

Plaintiffs,

v.

BEBE STORES, INC.,

Defendant.

No. 2:25-cv-02388-BJR

Honorable Barbara J. Rothstein

PLAINTIFFS' RESPONSE TO SHOW CAUSE ORDER

## INTRODUCTION

Plaintiffs respectfully submit this response to this Court's April 30, 2026 Order to Show Cause. D.E. 35. Consistent with this Court's ruling in another case under the Commercial Electronic Mail Act ("CEMA"), *Liss v. Skechers USA, Inc.*, No. 3:25-CV-05861-DGE, 2026 WL 1392327, at *3 (W.D. Wash. May 19, 2026), this Court has subject matter jurisdiction to hear this case. Defendant Bebe Stores, Inc. ("Bebe") agrees, arguing in its response to the Court's order that this Court has subject matter jurisdiction. D.E. 39. As Plaintiffs have alleged receipt of deceptive commercial emails in violation of CEMA, Article III standing is established. Accordingly, there is no question this Court has jurisdiction to hear this case.

## FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs filed this case in King County Superior Court on October 21, 2025. D.E. 1-1. On November 25, 2025, Bebe removed this case to this Court. D.E. 1, 2.  Bebe explicitly averred in

PLAINTIFFS' RESPONSE TO SHOW CAUSE ORDER
(2:25-cv-02388-BJR) – 1

its removal papers that this Court held diversity jurisdiction under 28 U.S.C. § 1332 and CAFA jurisdiction. D.E. 1. Bebe moved to dismiss in January 2026. D.E. 20, 24, 27, 28, 31. On April 30, 2026, this Court struck the motion to dismiss and ordered briefing on jurisdiction. D.E. 35.

## ARGUMENT

By removing this action, Defendant necessarily represented that the requirements of Article III—including standing—are satisfied. *See Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 682-85 (9th Cir. 2006). Consistent with *Skechers*, this Court has jurisdiction. *Skechers*, 2026 WL 1392327, at *3 (discussing plaintiff's allegations of annoyance and harassment at receiving emails with subject lines containing false or misleading statements); D.E. 1-1 at ¶¶ 14, 109–112.

### I.     Article III Standing is Satisfied Because Plaintiff Alleges Concrete Injuries.

Article III standing requires a concrete injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). At first glance, receipt of deceptive spam emails may not resemble the tangible injuries at issue in a criminal proceeding or commercial business litigation. Still, federal courts consistently confirm their authority to hear disputes stemming from injuries like invasion of privacy, nuisance, or intrusion upon seclusion. Spam emails are a special type of annoyance. They flood our inboxes, consume time to cull and delete, and when the information they contain is false or misleading, they serve a more nefarious purpose – they *deceive*. Through CEMA, the Washington legislature created a remedy for residents in receipt of commercial emails that contain misleading or deceptive information in their subject headings. Plaintiffs allege they received deceptive commercial emails in violation of CEMA, which constitutes a concrete injury. D.E. 1-1 at ¶¶ 109–112. Plaintiffs also allege that Bebe sent them spam emails. D.E. 1-1 at ¶¶ 4, 90, 109.

Standing under Article III does not require a tangible injury. The Supreme Court has observed that a plaintiff may satisfy the injury-in-fact requirement by alleging intangible harms. *Spokeo, Inc.*, 578 U.S. at 340 ("Although tangible injuries are perhaps easier to recognize, we have

PLAINTIFFS' RESPONSE TO SHOW CAUSE ORDER
(2:25-cv-02388-BJR) – 2

confirmed in many of our previous cases that intangible injuries can nevertheless be concrete"). Accordingly, actions to remedy "invasions of privacy, intrusion upon seclusion, and nuisance have long been heard by American courts, and the right of privacy is recognized by most states." *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017). As with unwanted calls and texts, the receipt of unwanted or unlawful spam emails are an "unwanted intrusion and nuisance" on consumers. *See id.* (finding that plaintiff established a concrete injury-in-fact for their Telephone Consumer Protection Act claim) ("Congress sought to protect consumers from the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and fax advertisements."); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954-55 (9th Cir. 2009). These are the types of harm which CEMA seeks to prevent. Just as the TCPA "establishes the substantive right to be free from certain types of phone calls and texts absent consumer consent[,]" *Van Patten*, 847 F.3d at 1043, CEMA protects Washington residents from the nuisance, confusion, and annoyance caused by deceptive spam emails.

As the Ninth Circuit has emphasized, "spam is largely considered a nuisance and a source of frustration to e-mail users who. . . must wade through inboxes clogged with messages peddling assorted, and often unwanted, products and services. *The rising tide of spam poses an even greater problem to businesses, institutions, and other entities through network slowdowns, server crashes, and increased costs.*" *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1044–45 (9th Cir. 2009) (emphasis added). Clogging people's inboxes with junk mail is one thing – but clogging consumer inboxes with *deceptive* spam is another.

So, this case is not about some purely technical statutory violation, but rather concrete harm resulting from the receipt of deceptive spam emails—one that aligns with historical harms like nuisance, long recognized as concrete injuries under Article III. *Van Patten*, 847 F.3d at 1043.

PLAINTIFFS' RESPONSE TO SHOW CAUSE ORDER
(2:25-cv-02388-BJR) – 3

STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

This is materially different from cases involving "bare procedural violations." *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 426-27 (2021). The Supreme Court has distinguished purely procedural violations, where standing is lacking, and statutory violations that result in real harm or a material risk of harm. *Id.* Where a plaintiff is directly exposed to the very harm that a statute was designed to prevent, standing is satisfied. *See id.* That is precisely the case here. The CEMA violations which Plaintiffs identify in the Complaint, D.E. 1-1, are not premised upon technical defects, divorced from real-world harm. CEMA prohibits the transmission of commercial emails containing false or misleading information and Plaintiffs allege that they were personally subjected to those deceptive communications. The injury is not hypothetical or procedural; it occurs upon receipt of each unlawful transmission. These communications exposed Plaintiffs to misleading information, deprived Plaintiffs of truthful information, and required Plaintiffs to expend time and attention reviewing and managing unlawful emails. These are real-world harms. Defendant spammed Plaintiffs with deceptive emails. D.E. 1-1 at ¶¶ 4, 5, 36, 41, 90, 109–112.

CEMA's structure and text confirm that Washington's legislature sought to remedy real, recipient-focused harms which arise from deceptive commercial emails. The statute makes it unlawful to "initiate the transmission" of a commercial electronic mail message that contains false or misleading information in its subject line and provides damages "to the recipient" of such messages. Wash. Rev. Code. §§ 19.190.020(1), (1)(b) and 19.190.040. By tying liability and recovery to the transmission and receipt of unlawful emails, the statute demonstrates a clear legislative judgment that such communications inflict direct harm on recipients. That judgment, of course, is based on the nature of these spam emails—where subject headings are the only means of assessment for consumers hoping to temper the barrage of value-less and time-wasting

communications. As the Supreme Court of Washington opined, construing the meaning and purpose of CEMA:

> CEMA sought to give consumers relief from commercial spam e-mail by requiring accuracy and truthfulness in the subject lines of such e-mails. The legislature sought to achieve this objective by targeting an e-mail's header and subject lines: the two pieces of information consumers first glean when faced with the choice of deleting a message or engaging with its content.

*Certification from United States Dist. Ct. for W. Dist. of Washington in Brown v. Old Navy, LLC*, 4 Wash. 3d 580, 590–91 (2025) (en banc).

In *Brown*, the Washington Supreme Court observed that the injury under CEMA occurs when a recipient receives an email with a prohibited "false or misleading" subject heading. *Id.* at 584 ("Under CEMA, the injury is receiving an e-mail that violates its regulations."). This confirms that the harm is neither procedural nor abstract; it arises from the recipient's real-world experience of receiving an email with a "false or misleading" subject line, "faced with the choice of deleting a message or engaging with its content." *Id.* Under federal standing doctrine, this recognition is critical as it identifies a specific and concrete event—the receipt of an unlawful message—as the point at which injury occurs. Plaintiffs experienced this precise injury when they received Defendant's marketing emails containing misleading statements in their subject line. D.E. 1-1 at ¶¶ 4, 5, 36, 41, 63, 82, 90, 109–112.

To the extent that concerns exist regarding the absence of reliance or economic injury, those considerations do not defeat Article III standing. Article III doesn't require plaintiffs to plead the efficacy of a defendant's deceptive conduct. *See Harbers v. Eddie Bauer*, LLC, 415 F. Supp. 3d 999, 1005-10 (W.D. Wash. 2019). It simply requires that plaintiffs allege a concrete injury, not that they prove every element of a statutory or common law claim. *See Spokeo, Inc.*, 578 U.S. at 338. Intangible harm may be concrete even without economic loss. *See TransUnion LLC*, 594 U.S.

STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

at 425. In *Van Patten*, 847 F.3d at 1043, the Ninth Circuit found that mere receipt of unlawful communications was itself a concrete injury. Nor must plaintiffs allege reliance on the deceptive content of the emails. The injury under CEMA occurs when the violative email is received and the recipient is exposed to misleading information. *See Brown*, 4 Wash. 3d at 584. Thus, reliance and economic loss are not required to establish standing under Article III.

CEMA is a substantive consumer protection statute meant to prevent deceptive intrusions into the inboxes of Washington residents and to compensate Washington residents for the harms those deceptions cause. That is why the Washington legislature explicitly related CEMA to the State's Consumer Protection Act. *See* Wash. Rev. Code Ann. § 19.190.100. Plaintiffs' allegations, that they received deceptive commercial emails in violation of CEMA, fall squarely within the harm which the statute was enacted to address. Because Plaintiffs have alleged concrete injuries sufficient to satisfy Article III, remand on standing grounds is not required.

## II.    Jurisdictional Discovery is Appropriate Prior to Remand.

If the Court has remaining questions regarding standing or the amount in controversy, Plaintiffs respectfully suggest that limited jurisdictional discovery would be appropriate before remand, particularly where relevant information is within Defendant's exclusive control. In the Ninth Circuit, jurisdictional discovery may be permitted where more "fully developed facts are necessary." *Laub v. U.S. Dept. of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (finding that jurisdictional discovery is proper where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.") (internal citations omitted). Here, key jurisdictional issues such as the number of emails sent, the number of Washington residents who received emails, and the nature of Defendant's email practices are uniquely within Defendant's control. Limited discovery focused on these issues would allow the

PLAINTIFFS' RESPONSE TO SHOW CAUSE ORDER
(2:25-cv-02388-BJR) – 6

STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

Court to resolve jurisdictional questions based upon a developed factual record rather than Defendant's estimations. Accordingly, if the Court is not prepared to discharge the Order to Show Cause based on the current record, Plaintiffs respectfully request leave to conduct targeted jurisdictional discovery prior to any remand determination.

### III.   If Article III Standing is Lacking, the Proper Remedy is Remand, Not Dismissal.

If the Court concludes that Article III standing has not been established, then the *only* proper course is a remand to state court, not dismissal. Under 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." The statute expressly uses the word "shall." The Ninth Circuit has confirmed that this directive is mandatory. *See Polo v. Innoventions International, LLC*, 833 F.3d 1193, 1196-97 (9th Cir. 2000). "Remand is the correct remedy because a failure of federal subject-matter jurisdiction means only that the federal courts have no power to adjudicate the matter." *Id.* at 1196. This rule reflects the fundamental principle that state courts are not bound by Article III limitations and may adjudicate claims that federal courts cannot. *Id.*; *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989). Thus, if the Court determines that Article III standing is lacking, it should remand this action to Washington state court.

### IV.   Defendant's Requested Stay is Inappropriate.

At the end of its Response, Bebe asks the court, should it be "inclined to order remand," to stay this case instead. D.E. 39 at 9–10. Specifically, Bebe suggests a stay pending the Ninth Circuit's decision on Article III standing in *Montes v. Catalyst Brands LLC*, No. 2:25-CV-0281-TOR, 2025 LX 580851 (E.D. Wash. Dec. 4, 2025). This request is wholly inappropriate. This Court's jurisdiction must be determined based on the record and governing law, now, not mere speculation as to future decisions. If subject matter jurisdiction is absent here, then the Court lacks

PLAINTIFFS' RESPONSE TO SHOW CAUSE ORDER
(2:25-cv-02388-BJR) – 7

STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

the power to indefinitely stay the merits litigation. Remand is mandatory. 28 U.S.C. 1447(c) ("if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). A federal court without jurisdiction may not retain a removed state-law action to await future authority. Further, Bebe fails to articulate the hardship that is required to justify a discretionary stay. By contrast, such delay would prejudice Plaintiffs and the putative class by stalling discovery, class proceedings, and Plaintiffs' request for injunctive relief from Bebe's ongoing conduct. If Bebe wants a stay of this litigation on some other basis (like a pending case somewhere else that might apply somehow), then it should file a motion so this Court can rule on a fully briefed record.

## CONCLUSION

Remand is unnecessary because Article III standing has been adequately alleged and the amount in controversy plausibly exceeds $5 million under CAFA. Accordingly, the Court should discharge the Order to Show Cause and retain jurisdiction. Alternatively, if the Court finds jurisdiction to be lacking, remand, not dismissal, is appropriate.

RESPECTFULLY SUBMITTED AND DATED this 29th day of May, 2026.

*/s/ Michael C. Tackeff, pro hac vice*
J. Gerard Stranch, IV, *pro hac vice* forthcoming
Michael C. Tackeff, *pro hac vice*
Andrew K. Murray*, pro hac vice*
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
gstranch@stranchlaw.com
mtackeff@stranchlaw.com
amurray@stranchlaw.com

*/s/ Samuel J. Strauss*
Samuel J. Strauss, WSBA #46971
Raina C. Borrelli, *pro hac vice forthcoming*

PLAINTIFFS' RESPONSE TO SHOW CAUSE ORDER
(2:25-cv-02388-BJR) – 8

**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

**STRAUSS BORRELLI, PLLC**
980 North Michigan Avenue, Suite 1610
Chicago, Illinois 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops, *pro hac vice*
Natalie A. Lyons, *pro hac vice*
Ian R. Bensberg, *pro hac vice*
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

I certify that this memorandum contains no more than 8,000 words, in compliance with the Local Civil Rules. */s/ Michael C. Tackeff, pro hac vice*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Michael C. Tackeff, hereby certify that, on this date, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATED this 29th day of May, 2026.

*/s/ Michael C. Tackeff, pro hac vice*
Michael C. Tackeff, *pro hac vice*
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
mtackeff@stranchlaw.com

PLAINTIFFS' RESPONSE TO SHOW CAUSE ORDER
(2:25-cv-02388-BJR) – 9